UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MANUBHAI N. PATEL, et al., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV01207 ERW |
| | ) | |
| MICHAEL CHERTOFF, Secretary of the | ) | |
| Department of Homeland Security, et al., | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendants Michael Chertoff, Secretary of the Department of Homeland Security, and Michael Jaromin's, District Director, United States Citizenship and Immigration Service ("USCIS"), ("Defendants") Motion to Dismiss Plaintiffs' Complaint [doc. # 3].

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Manubhai Patel and his wife, Plaintiff Ramilaben Patel ("Plaintiffs"), are natives and citizens of India, but have resided in the United States for more than ten years. Plaintiff Manubhai Patel entered the United States on June 5, 1992 on a tourist visa. In 1993, he filed an initial request for asylum but did not pursue the process further. Then in July 2002, the government approved Plaintiff Manubhai Patel's I-140 Immigrant Petition for Alien Worker. In September 2002, Plaintiff Manubhai Patel filed a Form I-485 Application for Adjustment of Status to Permanent Resident based upon his approved I-140 Petition.

Plaintiff Ramilaben Patel entered the United States on September 11, 1993. Like her

1

husband, she also filed a request for asylum but did not proceed further with that process. At the same time as she filed her request for asylum, Plaintiff Ramilaben Patel also filed an I-765 Application for Employment Authorization which was approved on October 21, 1993. In September 2002, Plaintiff Ramilaben Patel filed a Form I-485 Application for Adjustment of Status to Permanent Resident based upon her husband's approved I-140 Petition.

In March 2004, USCIS requested additional information from Plaintiffs regarding their I-485 Applications for Adjustment. Plaintiffs supplied the additional information as requested. Then on March 22, 2005, USCIS scheduled an interview with Plaintiffs to be held in the St. Louis, Missouri USCIS office the following month. Plaintiffs' I-485 applications, which are the subject of this suit, remain pending. Plaintiff filed the current action against Defendants to compel adjudication of their applications for Adjustment of Status. Defendants did not file an answer, but filed the pending Motion to Dismiss for lack of Subject Matter Jurisdiction.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), or alternatively Rule 12(b)(6). Since jurisdictional issues are properly decided in the context of a Rule 12(b)(1) motion to dismiss for want of subject matter jurisdiction rather than pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court will treat Defendants' motion as the former rather than the latter. *Brown v. United States*, 151 F.3d 800, 803–04 (8th Cir. 1998). In order for Plaintiffs to be entitled to relief, they must plead and prove that this Court has jurisdiction to grant the relief requested. *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) attacks the claim

based upon a lack of subject matter jurisdiction.[1] The issue is the court's "very power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). Consequently, a court faced with a Rule 12(b)(1) motion must determine whether the motion is brought as a facial or factual attack to the complaint. A court "restricts itself to the face of the pleadings" in a facial attack and the "complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 729, n. 6 (citations omitted). There are no contested facts in this case. Therefore, the Court treats Defendants' Motion as a facial attack and will confine itself to the face of the pleadings.

## III. DISCUSSION

Plaintiffs have invoked numerous bases of jurisdiction in this case. The Court will briefly address each argument. However, the Court notes that Defendants respond only to Plaintiffs' assertion of jurisdiction under the Mandamus Act and the Immigration and Nationality Act (INA) in detail, therefore the Court will address these assertions of jurisdiction in greater detail.

### A. Federal Question Jurisdiction, and the Declaratory Judgment Act

Plaintiffs assert jurisdiction under both 28 U.S.C. § 1331, federal question jurisdiction, and under 28 U.S.C. § 220, the Declaratory Judgment Act. However, neither of these provision independently provide jurisdiction in this Court, without further allegation of a violation of a federal statute, or potential violation. "Section 1331 is familiar, of course, as the general grant of civil federal question jurisdiction to the district courts for actions arising under the Constitution,

---

[1]"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter. . .." Fed. R. Civ. P. 12(b)(1).

3

laws, or treaties of the United States." *Sabhari v. Reno*, 197 F.3d 938, 943 (8th Cir. 1999) (citing 28 U.S.C. § 1331). The federal question statute on its own, however, does not grant substantive rights in suits brought against the United States. *Id.* (citing *Hagemeier v. Block*, 806 F.2d 197, 202–03 (8th Cir. 1986)). Therefore, a party seeking relief against the United States must base their claim on some additional authority which waives the government's sovereign immunity. *Id.*

Additionally, it is well settled that the Declaratory Judgment Act enlarges the range of remedies available in federal courts but does not confer jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Consequently, the Declaratory Judgment Act cannot serve as an independent basis for subject matter jurisdiction for this Court. Both 28 U.S.C. § 1331, and the Declaratory Judgment Act serve as a basis for jurisdiction, only when the complaint pleads a violation of a substantive right under a distinct federal statute, or the United States Constitution, they do not confer jurisdiction. Therefore it is necessary for the Court to look to Plaintiffs' alternate bases of jurisdiction.

**B.     Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b) and §§ 701,** *et seq.*

Plaintiffs argue section 706 of the APA, 5 U.S.C. § 706, in conjunction with 28 U.S.C. § 1331, the federal question statute, provide this Court with jurisdiction over their action seeking to compel the USCIS to act on Plaintiffs' applications to adjust status. Section 706(1) of the APA provides that courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Defendants respond that jurisdiction in Federal Court is lacking when the agency decision is not final, and that as no decision has been made in this cased it cannot be considered a final agency action.

In support of their position, Plaintiffs cite an Eighth Circuit case in which the court found the APA in conjunction with 28 U.S.C. § 1331 provided a basis for jurisdiction over an alien's suit against the government. *Sabhari*, 197 F.3d at 942. However, that case is distinguishable from the instant case. In *Sabhari*, the plaintiff sought an order compelling the government to grant the plaintiff's petition to be classified as an immediate relative of a United States citizen. *Id.* at 941, 942. The plaintiff's petition for reclassification had been denied by the district director. *Id.* at 941. The district director's decision was subsequently affirmed on appeal by the Board of Immigration Appeals. *Id.* In holding jurisdiction did lie, the Eighth Circuit relied on the agency having taken *final* action on the plaintiff's petition. *Id.* at 942. The court's holding rested on sections 702[2] and 704[3] of the APA, not section 706, which is relied upon by Plaintiffs. *Id. Sabhari* did not consider judicial review of a delay in agency action, rather, it dealt with reviewability of *final* agency action. *Id.* Consequently, Plaintiffs' reliance on that case is misplaced.

Contrary to Plaintiffs' argument, federal jurisdiction under the APA is lacking when the agency decision is not final within the meaning of 5 U.S.C. § 704. *National Parks Conservation Assoc. v. Norton*, 324 F.3d 1229, 1239 (11th Cir. 2003); *see also Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001); *Attias v. Chertoff*, No. 4:06CV00534 CAS, 2006 WL 1738377, at *2 (E.D. Mo. June 22, 2006) (unreported); *Jabr v. Chertoff*, No.

---

[2] "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

[3] "[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704.

4:06CV00543 RWS, 2006 WL 3392504, at *2 (E.D. Mo. November 21, 2006) (slip opinion). Nevertheless, both Parties recognize that a district court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Further support for judicial review in cases of unreasonable delay is found in 5 U.S.C. § 555(b), which states, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

Although the potential is provided for in 5 U.S.C. § 555 for a court to compel action, the circumstances where court interference is warranted are limited. The provision of the INA, which allows for adjustment of status, strongly supports a finding that interference in the present case is inappropriate. That provision states:

> [t]he status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner *may* be adjusted by the Attorney General, in his *discretion* and under such regulations as he may proscribe, to that of an alien lawfully admitted for permanent residence. . . .

8 U.S.C. § 1255(a) (emphasis added). Plaintiffs have alleged no circumstances that would indicate the USCIS has unlawfully withheld or unreasonably delayed action on their applications. Defendants have not remained completely idle in regard to Plaintiffs' applications to adjust status. In March 2004, Defendants requested additional information from Plaintiffs so that Defendants could continue evaluating Plaintiffs' applications. Once Plaintiffs supplied that information, Defendants scheduled an interview with Plaintiffs at the St. Louis USCIS office on April 18, 2005. These facts show Defendants are acting on Plaintiffs' applications. The Southern District of New York held, in *Saleh v. Ridge*, that a five year delay in adjudicating adjustment of status applications in asylum cases, while not insubstantial, was not unreasonable as a matter of law.

6

367 F.Supp.2d 508, 513 (S.D.N.Y. 2005); *see also INS v. Miranda*, 459 U.S. 14, 18–19 (1982) (finding 18-month delay not unreasonable in light the volume of applications, the agency's need to investigate; and further stating that the passage of time alone does not constitute unreasonable delay); *Attias v. Chertoff*, 2006 WL 1738377, at *2 (E.D. Mo. June 22, 2006) (finding three-year delay not unreasonable where complaint failed to allege other circumstances of unreasonableness). There is no statutory or regulatory limit on the time that USCIS may take in evaluating an alien's I-485 application to adjust status to permanent resident. While it is unfortunate Plaintiffs have had to wait four and a half years since filing their applications, the Court cannot say such a delay confers jurisdiction pursuant to the APA, especially in light of the fact that the Defendants have at least twice taken affirmative action on Plaintiffs' applications and that Plaintiffs allege no suspicious motives or unscrupulous actions by Defendants.

### C. Immigration and Nationality Act ("INA"), 8 U.S.C. § 1329.

Plaintiffs also cite 8 U.S.C. § 1329 as a basis for invoking this Court's jurisdiction. Prior to 1996, that section might have provided the necessary jurisdictional basis to allow the Court to consider Plaintiffs' claims. However, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") significantly amended § 1329 which now reads in pertinent part:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, *brought by the United States* that arise under the provisions of this subchapter. . . . Nothing in this section shall be construed as providing jurisdiction for *suits against* the United States or its agencies or officers.

8 U.S.C. § 1329 (emphasis added); *see also Sabhari*, 197 F.3d at 942.

Consequently, section 1329 does not provide a jurisdictional basis for Plaintiffs' claims

against Defendants in this case. *Sabhari*, 197 F.3d at 942. Nevertheless, Plaintiffs are not foreclosed from seeking some other jurisdictional mechanism to allow this Court to hear their claims. *Id.* ("We emphasize that the phrase 'nothing in this section shall be construed [to provide] jurisdiction' does not preclude jurisdiction under other provisions of law.") (citing 8 U.S.C. § 1329). Therefore, the Court will address the other provisions invoked by Plaintiffs.

### D. Writ of Mandamus

Plaintiffs next contend this Court has jurisdiction to consider their claims for relief in the nature of mandamus pursuant to §§ 1361 and 1651 of title 28 of the United States Code. "A district court may grant a writ of mandamus only in extraordinary situations and only if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." *Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir. 2006) (citation omitted). As previously stated, evaluation of an alien's application to adjust status has been committed by Congress to the discretion of the Attorney General. 8 U.S.C. § 1255 ("The status of an alien. . . may be adjusted by the Attorney General, in his discretion. . .."). In light of the Attorney General's discretion in evaluating applications for adjustment of status, Plaintiffs cannot establish the second prerequisite to mandamus relief, that Defendants had a non-discretionary duty to act. *See Espin v. Gantner*, 381 F. Supp.2d 261, 265 (S.D.N.Y. 2005) (providing discretionary nature of adjustment process precludes mandamus relief).

Moreover, Congress has precluded judicial review of "any judgment regarding the granting of relief under section . . . 1255 of this title [adjustment of status], or . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority

8

for which is . . . in [their] discretion . . . ." 8 U.S.C. § 1252(a)(2)(B) as amended by the Real ID Act of 2005.[4] Since decisions regarding the evaluation of an alien's application for adjustment of status are within the Attorney General's discretion, 8 U.S.C. § 1255, section 1252(a)(2)(B) prohibits this Court from entertaining Plaintiffs' requests for relief in the nature of a writ of mandamus. *See* 8 U.S.C. § 1252(a)(2)(B).

## E. Fifth Amendment Due Process.

In their Complaint, Plaintiffs cite the Fifth Amendment of the United States Constitution as a source of this Court's subject matter jurisdiction in this case. Though they do not explicitly argue so in their Complaint or Reply to Defendants' Motion to Dismiss, presumably Plaintiffs contend Defendants' alleged delay in processing their applications to adjust status violates Plaintiffs' rights to procedural due process.

To make out a due process claim, a party must demonstrate that a protected liberty or property interest is at stake. *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003). "The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising" power. *Id.* (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)) (internal quotations omitted). The Court is unaware of any statutory or regulatory provision prescribing a specific time frame within which the government must rule on an alien's I-485 application to adjust status. In fact, Congress gave the Attorney General complete discretion where adjustment of status is concerned. *See* 8 U.S.C. § 1255. The relief sought by Plaintiffs has been described as "a matter of administrative grace" and

---

[4] Pub. L. No. 109-13, Div. B § 106, 119 Stat. 231, 305 (2005). Section 1252(a)(2)(B) now explicitly precludes judicial review of such discretionary decisions when, *inter alia*, review would be based on 28 U.S.C. §§ 1361 and 1651. 8 U.S.C. § 1252(a)(2)(B).

9

as "a power to dispense mercy." *Nativi-Gomez*, 344 F.3d at 808 (citing *Ameeriar v. INS*, 438 F.2d 1028, 1030 (3d Cir. 1971) and *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir. 1985) respectively). "No person has a constitutionally protected liberty interest in such speculative relief." *Nativi-Gomez*, 344 F.3d at 808. As the Eighth Circuit explained:

> What matters is whether the individual has an expectation of receiving some measure of relief. Here he does not. However broadly and amorphously the concept of constitutionally protected liberty interests has been defined within procedural-due-process jurisprudence, it does not include statutorily created relief that is subject to the unfettered discretion of a governmental authority. The failure to receive discretionary adjustment-of-status relief does not constitute the deprivation of a constitutionally-protected liberty interest.

*Id.* at 809. Consequently, Plaintiffs have failed to state a procedural due process claim under the Fifth Amendment.

### F. Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.

Finally, Plaintiffs invoke the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. The FTCA confers concurrent jurisdiction in the district courts and the United States Court of Federal Claims for any "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department. . . ." 28 U.S.C. § 1346(a)(2); *see also Taylor v. United States*, 248 F.3d 736, 737 (8th Cir. 2001). Through § 1346, Congress has waived the United States' sovereign immunity when the Constitution, federal statute, or federal regulation provides a substantive right to recover money damages from the United States. *Taylor*, 248 F.3d at 738 (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)). The FTCA itself, however, does not create such substantive rights. *Id.* Therefore, "the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the

10

damages sustained." *Id.* (quoting *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983)) (internal quotations omitted). Plaintiffs have failed to allege, nor can this Court identify, any cause of action which would entitle Plaintiffs to money damages.[5] Consequently, 28 U.S.C. § 1346(a)(2) does not provide subject matter jurisdiction in this case.

## IV. CONCLUSION

Plaintiffs have failed to present any basis upon which this Court may legitimately exercise jurisdiction to hear their claims to compel Defendants to adjudicate Plaintiffs' applications. The procedure by which an alien may apply for adjustment of status is by is very nature discretionary, and cannot be compelled by this Court.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [doc. # 3] is **GRANTED**.

Dated this 24th of April, 2007.

_E. Richard Webber_
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[5] Furthermore, in their Prayer for Relief, Plaintiffs seek injunctive relief as well as costs and fees but not money damages. Plaintiffs also style their Complaint "Complaint for Mandamus." This would seem to indicate Plaintiffs themselves do not believe they are entitled to money damages in this matter.